**Douglas N. KROH, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 20, 1998.

Decided May 15, 1998.

Douglas N. Kroh, petitioner, for himself.

Clifford F. Blaze, Harrisburg, for respondent.

Arthur Selikoff, Harrisburg, for intervenor, Dept. of Labor and Industry.

Before PELLEGRINI and FRIEDMAN, JJ., and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

Douglas Neale Kroh (Claimant) appeals from a decision of the Unemployment Com-

pensation Board of Review (Board) finding that he was ineligible under Section 402.6 of the Unemployment Compensation Law (Law)[1] because he was incarcerated.

Claimant was convicted of involvement in a corrupt organization and was sentenced to 24 to 59 and 1/2 months in the Perry County Prison. After his parole in June of 1995, Claimant was employed by Juniata Garment but was laid off in October of 1996 when work slowed purportedly due to foreign imports. As a result, Claimant began receiving unemployment compensation benefits. On January 7, 1997, when he was returned to prison because he violated his conditions of his parole, he was found ineligible for unemployment compensation under Section 402.6 of the Law, which provides that "[n]othing in this act shall require payment of unemployment compensation benefits for any weeks of unemployment during which the employee is incarcerated after a conviction" and benefits ceased.

On April 30, 1997, the Claimant submitted a request for backdating for compensable weeks ending January 11 through April 12, 1997, but the Capitol Region Job Center denied the request because he was incarcerated and not available for work.[2] Claimant appealed and the Referee, finding that while Section 402.6 states that "nothing in this Act shall require the payment of unemployment compensation benefits ... ", nothing in the Act states that a claimant shall be automatically ineligible for benefits while incarcerated after conviction. Because he was eligible for work release, the Referee found that he was available for work and awarded benefits for the weeks in question. The Commonwealth of Pennsylvania, Department of Labor and Industry, appealed that decision to the Board contending that the Referee misinterpreted the law and Claimant was ineligible for benefits. The Board reversed, holding that Section 402.6 of the Law clearly makes Claimant ineligible for benefits due to his conviction and incarceration during the weeks at issue. This appeal followed.[3]

Not disagreeing with the Board's interpretation of the Act,[4] Claimant contends that the Act is unconstitutional because it invidiously discriminates against convicted prisoners be-

1. Section 402.6 of Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. 802.6, added by the Act of October 30, 1996, P.L. 738.

2. Section 401(b), 43 P.S. § 801(b) of the Law provides that "compensation shall be payable to any employee who is unemployed, and who [h]as registered for work at, and thereafter continued to report to an employment office in accordance with such regulations as the secretary may prescribe, except that the secretary may by regulation waive or alter either or both of the requirements of this clause as to individuals attached to regular jobs and as to such other types of cases or situations with respect to which he finds that compliance with such requirements would be oppressive or would be inconsistent with the purposes of the act...." Section 401(d), 43 P.S. § 801(d) of the Law goes on to provide that compensation "shall be payable to any employee who is unemployed, and who (1) is able to work and available for suitable work: Provided, That no otherwise eligible claimant shall be denied benefits for any week because he is in training with the approval of the secretary nor shall such individual be denied benefits with respect to any week in which he is in training with the approval of the secretary by reason of the application of the provisions of this subsection relating to availability for work or the provisions of section 402(a) of this Act relating to failure to apply for or a refusal to accept suitable work."

3. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704; *Ascheim v. Unemployment Compensation Board of Review*, 694 A.2d 4 (Pa.Cmwlth.1997).

4. Even though Claimant has not challenged the interpretation of the statute, we note that when a question arises about the meaning of a statute, consideration of its title and preamble is appropriate. 1 Pa.C.S.A. § 1924. Here, the title is "Ineligibility of Incarcerated Employe" and the preamble states its purpose as "Providing for ineligibility of incarcerated employe." *Id.* Also, we note that when interpreting Section 306(a)(2) of the Workers' Compensation Act, 77 P.S. § 511(2), which provides: "Nothing in this act shall require payment of compensation for any period during which an employee is incarcerated after a conviction", we have stated that "the Legislature has removed any doubt concerning the disqualifying effect incarceration, in and of itself, has upon a claimant's entitlement to benefits during a period of compensation." *Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.)*, 664 A.2d 1081, 1084 (Pa. Cmwlth.1995), *affirmed*, —— Pa. ——, 705 A.2d 432 (1997).

cause, like workers' compensation and social security, the benefits are earned and convicted prisoners should be treated no differently than any other citizen. In effect, what Claimant appears to be claiming is that his rights are being violated under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because there is no reason otherwise eligible convicted prisoners were denied unemployment compensation premiums on their behalf.

■ Initially, we point out that just because assessments have been paid into the unemployment compensation fund does not entitle anyone to unemployment compensation. Addressing such an argument in *Sam v. Unemployment Compensation Board of Review*, 107 Pa.Cmwlth. 624, 528 A.2d 1067, 1068 (1987), we stated:

> In *Riley v. Unemployment Compensation Board of Review*, 100 Pa.Commonwealth Ct. 476, 515 A.2d 81 (1986), the claimant applied for benefits after working for thirty-five years. He was denied benefits because his earnings were insufficient. See Section 4(w)(2) of the Law, 43 P.S. § 753(w)(2). On appeal he argued, *inter alia*, that because he had paid into the fund as an employee, the fund "promised" that he would be eligible for benefits. We recognized this as the same type of quid pro quo argument raised in earlier cases and adhered to our decisional law. We add to this rationale today by noting, in addition, that were we to hold that mere payment by an employee into the fund would create a right to benefits, other disqualifying sections of the Law, including Section 402(e), 43 P.S. § 802(e) (willful misconduct) and Section 402(b), 43 P.S. § 802(b) (voluntarily quitting without necessitous and compelling reasons) possibly would be rendered nugatory. Such result, of course, would be absurd.

As to whether treating prisoners differently than other claimants is constitutionally permissible, in *Thomas v. Unemployment Compensation Board of Review*, 133 Pa. Cmwlth. 623, 577 A.2d 940 (1990), when addressing whether a classification that treated teachers in religious schools different than others was a classification that violated the Fourteenth Amendment, we reiterated the criteria used in determining whether a classification was valid as follows:

> The United States Supreme Court in addressing whether a classification is violative of the Fourteenth Amendment has stated:
>
>> Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievements of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it. [Citations omitted.]
>
> *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).
>
> Unless a classification is inherently suspect, such as those based on race, color, creed or national origin, a classification's validity is tested by assessing whether the classification has some reasonable basis. If the classification has some reasonable basis, then "it does not offend the Constitution simply because [it] is not made with mathematical nicety or because, in practice, it results in some inequality." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (citing *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911)). Consequently, "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan,* 366 U.S. at 426, 81 S.Ct. at 1105.

577 A.2d at 941–942. *See also Martin v. Unemployment Compensation Board of Re-*

*view,* 502 Pa. 282, 466 A.2d 107, *cert. denied,* 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 541.[5]

██ Because prisoners are not a suspect class,[6] there only needs to be a rational relationship between the cessation of unemployment benefits for weeks while a person is incarcerated after conviction for the classification to be constitutionally valid. The General Assembly had a legitimate reason not to want prisoners who were incarcerated and living at taxpayers' expense to receive unemployment compensation just because they were eligible for work release. Moreover, it could have felt that while on work release, because of restrictions necessarily imposed under those programs, prisoners were not sufficiently available for work so as to permit them to have a full range of employment options that other claimants have in pursuing new employment. Finally, in denying a prisoner unemployment, the General Assembly could have sought to advance the valid legislative goal of deterrence of criminal activity by the denial of unemployment benefits to those who have violated the law and are in prison.[7] Each show that the General Assembly had rational reasons to deny unemployment compensation benefits to incarcerated prisoners.

██ Accordingly, because Section 402.6 of the Law denying unemployment compensation benefits to incarcerated prisoners is constitutional, the Board's decision denying benefits is affirmed.

### ORDER

AND NOW, this 15th day of May, 1998, the decision of the Unemployment Compensation Board of Review is affirmed.

**FRIEDMAN, Judge, dissenting.**

I must respectfully dissent.

Unlike the majority, with its hypothetical, "rational" reasons to deny unemployment compensation benefits to incarcerated prisoners, I can see nothing rational about denying unemployment compensation to an individual, who otherwise would be entitled to benefits and who is available for work, merely because that individual also is an incarcerated prisoner. Accordingly, I would conclude that section 402.6 of the Unemployment Compensation Law (Law)[1] is unconstitutional, and I would reverse the order of the Unemployment Compensation Board of Review finding Douglas Neale Kroh ineligible for benefits under that section of the Law.

5. In *Martin,* our Supreme Court stated that the courts are not required to have record evidence or the legislative history to justify a classification and are free to hypothesize the reasons the legislature might have had for its classification. 466 A.2d at pp. 111–112.

6. To the contrary, a prisoner, by the very fact of his or her conviction and incarceration, has diminished civil rights. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Wise v. Dept. of Corrections,* 690 A.2d 846 (Pa.Cmwlth.1997).

7. It could also be argued that the General Assembly was, in effect, "overruling" decisions such as in *Greer v. Unemployment Compensation Board of Review,* 38 Pa.Cmwlth. 310, 392 A.2d 918 (1978) where we allowed a claimant unemployment benefits placed in the prison work-release program with the only restriction placed upon his availability for work was that he could not leave the prison alone to seek employment.

1. Section 402.6 of Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802.6.