DISSENTING OPINION BY
PRESIDENT JUDGE LEAVITT
The majority has carefully parsed the words of Section 402.6 of the Unemployment Compensation Law (Law)[1] and concluded that its directive on the eligibility of incarcerated persons for unemployment compensation is ambiguous. I agree with that conclusion. I part company with the majority in its decision to resolve the ambiguity against Daniel Harmon (Claimant), who is subject only to partial confinement and available to work Monday through Friday. Because the Law is remedial in nature, ambiguities therein should be resolved in favor of coverage. Accordingly, I respectfully dissent.
The majority acknowlédges,' correctly, the remedial nature of the Law. It quotes, with approval, this Court’s recitation that the “purpose of the Law is to be remedial and broadly construed so that employees who become unemployed through no fault of their own are provided with some semblance of economic security.” Darby Township v. Unemployment Compensation Board of Review, 59 Pa.Cmwlth. 284, 429 A.2d 1223, 1227 (1981). The majority also acknowledges that statutory disqualification provisions “should be narrowly construed and a claimant must not be denied compensation unless he is unequivocally excluded by the plain language of these provisions.” Penflex, Inc. v. Bryson, 506 Pa. 274, 485 A.2d 359, 365 (1984). Our task is to apply these principles to Section 402.6 of the Law, which states as follows:
An employe shall not be eligible for payment of unemployment compensation benefits for any weeks of unemployment during which the employe is incarcerated after a conviction,
43 P.S. § 802.6(a) (emphasis added).
Prior to the 1996- enactment of Section 402.6, incarcerated inmates on work release were able to. collect unemployment compensation. See Greer v. Unemployment Compensation Board of Review, 38 Pa. Cmwlth. 310, 392 A.2d 918 (1978). In Chamberlain v. Unemployment Compensation Board of Review, 631 Pa. 489, 114 A.3d 385, 396 (2015), our Supreme Court observed “that Section 402.6 was enacted to change the law originally established by the Commonwealth Court’s decision in Greer by precluding unemployment compensation benefits to those claimants who are incarcerated in prison and eligible for work release.”[2] The question here is the meaning of the phrase “any weeks of unemployment during which the employe is incarcerated....” 43 P.S. § 802.6 (empha *1068 sis added). Does “during” mean throughout the week of unemployment or does it mean a single point of time within that week?
The word “during” is defined two ways. It means (1) “throughout the duration of,” and (2) “at a point in the course of.” Merriam-Webster’s Collegiate Dictionary 360 (10th ed. 1997). Because “during” has two reasonable meanings, Section 402.6 is ambiguous. The majority chooses the second dictionary definition of “during,” but I would choose the first definition. This broader definition is more appropriate given our duty to give a broad construction to the Law’s remedial program and a narrow construction to a disqualification from that program.
The sentencing court ordered Claimant to serve his 60-day sentence on weekends so that he could keep his job. Under the first dictionary definition of “during,” Claimant is not incarcerated “throughout the duration of’ the week. He is not, therefore, automatically disqualified. Indeed, he is able to work Monday through Friday, 9:00 a.m. to 5:00 p.m., a typical work week. To deny him compensation because he spends weekends in prison is punitive and not consistent with the remedial purpose of the Law.
The General Assembly has directed that when the words of a statute “are not explicit,” we may ascertain legislative intent by considering a number of factors. 1 Pa. C.S. § 1921(c).[3] One factor, of the eight, is “administrative interpretations.” 1 Pa. C.S. § 1921(c)(8). “[Although courts often defer to an agency’s interpretation of the statutes it administers, where ... the meaning of the statute is a question of law for the court, [and the court is] convinced that the agency’s interpretation is unwise or erroneous, that deference is unwarranted.” Rosen v. Bureau of Professional and Occupational Affairs, State Architects Licensure Board, 763 A.2d 962, 968 (Pa. Cmwlth. 2000). Such is the case here.
In explaining its holding, the Board stated as follows:
Section ⅛02.6 of the Law states that a claimant is disqualified for any weeks in which he is incarcerated after conviction. The record is clear that the claimant spent a portion of each of the weeks at issue confined to the Philadelphia County prison system. Although he was able to work part of those weeks in a work release program, this does not change the fact that he was incarcerated during those weeks; and the Section 402.6 disqualification still applied. See Kroh v. UCBR, 711 A.2d 1093 (Pa. Cmwlth. 1998)(affirming the Board’s denial of benefits to a claimant under Section 402.6 during weeks that he was eligible for work release). The Kroh holding was unaffected by the recent opinion of Chamberlain v. UCBR, 83 A.3d [283] 282 (Pa. Cmwlth. 2014), so denial of benefits is required for an incarcerated claimant who is able and available for work release.
*1069 Board Adjudication, 4/15/2015, at 1 (emphasis added). The Board did not address the meaning of the word “during.” Rather, it focused solely on the word “incarcerated.” Because the Board did not address the ambiguity in Section 402.6, it is impossible to give its holding any deference.
The other problem with the Board’s rationale is that it rests upon the erroneous supposition that Claimant was in a “work release” program. He was not. Claimant was serving a sentence of partial confinement, which is imposed “[wjhere the court determines the rehabilitative needs are high and the risk to the public posed by the offender ... is sufficiently low.” Commonwealth v. Patton, 409 Pa.Super. 304, 597 A.2d 1216, 1218 (1991). From Sunday afternoon at 3:00 p.m. until Friday evening at 5:00 p.m., Claimant is at liberty and able to work. He is not under the confines of any penal institution.
The Statutory Construction Act directs that where the words of the statute are not explicit, we may look, inter alia, at the “occasion and necessity for the statute,” and the “former law, if any, including other statutes upon the same or similar objects.” 1 Pa. C.S. § 1921(c)(1), (5). Our Supreme Court has undertaken this exercise. In Chamberlain, it held that Section 402.6 was enacted to end the eligibility of inmates on work release for unemployment compensation. This Court has further elaborated that Section 402.6 was enacted to bar prisoners “living at taxpayers’ expense to [be able] to receive unemployment compensation just because they were eligible for work release.” Kroh v. Unemployment Compensation Board of Review, 711 A.2d 1093, 1096 (Pa. Cmwlth. 1998). A person on house arrest does not live at taxpayer expense. Accordingly, the Supreme Court held that Section 402.6 did not disqualify a person on house arrest from receiving unemployment benefits. Chamberlain, 114 A.3d at 396.
The majority cites a memorandum opinion, Gonzalez v. Unemployment Compensation Board of Review, 2015 WL 5511031 (Pa. Cmwlth., No. 1825 C.D. 2014, filed August 18, 2015), and suggests that there is no need for a “different result” here. But there is. Gonzalez neither acknowledged nor addressed the ambiguity of the word “during” in Section 402.6 of the Law. Rather, Gonzalez focused on the plain meaning of the word “incarcerated” and did not mention the word “during.”
The Board argues that incarceration at any point in the week, whether for two days or one hour, renders an employee ineligible for unemployment compensation. Under this view, a person arrested for disorderly conduct on Friday night, who spends one night in jail, pleads guilty and gets a sentence for time served, is ineligible for unemployment compensation for the entire week. This outcome is not consistent with the principle that a disqualification provision should be narrowly construed. Penflex, 485 A.2d at 365. Notably, “a legislative measure will be considered penal where ... the effect of the statute is so harsh that ‘as a matter of degree’ it constitutes punishment.” Evans v. Pennsylvania Board of Probation and Parole, 820 A.2d 904, 912 (Pa. Cmwlth. 2003) (emphasis added). A penal provision “shall be strictly construed.” 1 Pa. C.S. § 1928(b)(1).[4]
Unlike the incarcerated inmate on work release, Claimant does not live at taxpayer expense. Other than his weekend meals from the government, he bears the burden of maintaining a place to live, securing *1070 transportation and providing -for all • the necessities of life. Claimant’s weekend incarceration may be his “fault,” but his unemployment is not.
Section 3 of the Law, entitled “Declaration of Public Policy,” states, in relevant part, as follows:
Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of the Commonwealth. Involuntary unemployment and its resulting burden of indi-gency falls with crushing force upon the unemployed worker, and ultimately upon the Commonwealth amd its political subdivisions in the form of poor relief assistance. Security against unemployment and the' spread of indigency can best be provided by the systematic setting aside of financial reserves to be used as compensation for loss of wages by employes during periods when they become unemployed through no fault of their own.
43 P.S. § 752 (emphasis added). The declaration of poliey in Section 3 “is to be considered in construing” the Law. Department of Labor and Industry, Bureau of Unemployment and Unemployment Compensation v. Unemployment Compensation Board of Review, 148 Pa. Super. 246, 24 A.2d 667, 667 (1942). Claimant’s potential indigency falls “ultimately upon the Commonwealth and its political subdivisions in the form of poor relief assistance.” 43 P.S. § 752. To deprive Claimant of unemployment • compensation not only punishes him, it also burdens the system by which we provide relief to the indigent. This result is not consistent with the directive in Section 3 on the proper construction of the Law, let alone any remedial statute, ...
I construe the “weeks of unemployment during which the employe is incarcerated” to mean that an employee is automatically disqualified only where he is incarcerated “throughout the duration of’ the week. Merriam-Webster’s Collegiate Dictionary 360 (10th ed. 1997). He may still be disqualified if his lesser term of incarceration adversely affects the Law’s requirement that he be “able to work and available for suitable work.” Section 401(d)(1) of the Law, 43 P.S. § 801(d)(1).[5] I would reverse the Board’s adjudication and remand the case for further proceedings.
Judge Wojcik and Judge Cosgrove join in this dissenting opinion,

. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, added by the Act of October 30, 1996, P.L. 738, as amended, 43 P.S. § 802.6.

. In doing so, the Supreme Court relied on the comments of Representative William Lloyd, the proponent of the legislation, who stated:
Mr. Speaker, this amendment would put into the Unemployment Compensation Law a prohibition which is similar to one which we inserted into the workers’ compensation law in 1993. Specifically, this amendment says that someone who is incarcerated after a conviction does not receive unemployment benefits.
I learned to my surprise a month or so ago from a business in my district that it is possible now, if you are convicted and you are in prison and you qualify for work release and your employer does not want you back, you then get unemployment compensation, This businessman in my district and the other employees in that company do not think that is right; I do not think that is right either, and I think we ought to change the law.
Id. (citing 1996 Pa. Legis. J., House, p. 835 (May 13, 1996)) (emphasis added).

. Section 1921(c) states:
When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history'
(8) Legislative and administrative interpretations of such statute.
1 Pa. C.S. § 1921(c).

. Had the trial court sentenced him to serve the 60 days consecutively, then Claimant would be eligible for unemployment in two months. The weekend sentence extended his disqualification for more than six months. This is punitive.

. The availability requirement is not absolute. The Law does not require the claimant to "be available for full-time work, for. permanent work, for his most recent work, or for his customary job, so long as the claimant is ready, willing and able to accept some suitable work.” Rohde v. Unemployment Compensation Board of Review, 28 A.3d 237, 243 (Pa. Cmwlth. 2011).